## Cobb, Christy & Co.

*v.*

### The Illinois Central Railroad Company.

1. Sale—*whether property in the thing passes, so as to give a right of action.* Where corn is shipped by railroad for a purchaser, a bill of lading forwarded to him, and a draft drawn on him for the price, which is paid, the title to the grain will, *ipso facto*, be transferred to and vested in such purchaser, but the acceptance and payment of drafts drawn on general account, without reference to any particular lot forwarded, will not pass the title.

2. Where a party buys grain in his own name, for which he is responsible, and ships the same to another, who advances or pays no money on the same, but who accepts and pays drafts drawn on general account, the latter will not have such a property in the grain, either general or special, as to give him a right to maintain an action against the carrier for damages resulting from a delay in transportation, especially when it is provided by contract that the grain must first pass inspection.

3. Pleading and evidence—*proof required under general issue.* Under the general issue in assumpsit against a carrier to recover damages for a delay in the transportation of grain, the plaintiff must show, by a clear preponderance of evidence, a right to recover. If he fails to show any property in the grain, this will be decisive against him, without reference to any errors as to the other material facts of the case.

4. Carrier—*liability for delay in transportation.* Where a railway company refused to furnish cars for the transportation of grain to Cairo during the war, on account of the large accumulation of cars on its track at that point waiting to be unloaded, and finally furnished cars upon the promise of the shipper to unload the same, which was not done either by him or the consignee, but refused, it was *held*, in a suit against the company to recover damages for delay in transporting the grain, the jury were justified in finding for the defendant.

Appeal from the Circuit Court of McLean county.

Messrs. LINCOLN, SMITH & STEPHENS, Mr. L. WELDON, and Mr. HAMILTON SPENCER, for the appellants.

Messrs. WILLIAMS, BURR & CAPEN, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

Appellees, the Illinois Central Railroad Company, were defendants, in the McLean circuit court, to an action brought against them, as common carriers, by Cobb, Christy & Co., claiming damages for their negligence and delay in transporting a quantity of corn, claimed to be the property of the plaintiffs, and delivered to the defendants as common carriers, to be carried to Cairo on their road, by which it became depreciated in value and was measurably lost to the plaintiffs. The jury trying the cause returned a verdict for the defendants, on which the court, after denying a motion for a new trial, rendered judgment, to reverse which plaintiffs appeal.

The cause has been before this court several times, in the decision of which certain principles were declared, on the view then taken of the evidence, which appellants claim have either not been recognized or seriously departed from by the rulings of the circuit court on this, the last, trial.

The transaction involved in this litigation had its origin in the months of January, February and March, extending to April 10, 1865, in which months, it is claimed, large quantities of corn belonging to appellants were delivered to appellees, on and after January 10, as common carriers, to be transported by them to Cairo, and there delivered to the consignee of appellants.

Most, if not all, the questions raised upon this record have been passed upon by this court as they arose upon the facts then before us, or supposed to appear in those records. The principles of law then announced, on these supposed existing facts, we have no reason to disregard, but reaffirm them. *Illinois Central Railroad Co.* v. *Cobb, Christy & Co.* 64 Ill. 128.

The central question in this case is, had appellants such a

general or special property in this corn as to give them a right of action? This is to be determined by the evidence. The jury, by their verdict, under proper instructions on this point, have found they had not, and a careful examination of the testimony satisfies us there is evidence sufficient to sustain the finding.

On this point, in the case *supra*, this court said, on the facts as they then appeared in that record: "By the arrangement between them and Fallis, he drew on them for the cost of the corn as soon as he shipped it, at the same time forwarding the bills of lading. From the moment the corn was shipped and the bills of lading transmitted to them, and bills of exchange drawn upon them, they acquired, even as against Fallis, a special property in the corn, which placed it beyond his control, and, indeed, gave them, virtually, all the rights of an owner."

It would be understood, from this quotation of the opinion, that for each specific shipment of corn a bill of exchange or draft was drawn for its price or value, which appellants paid. The testimony in this record does not show this. It shows the drafts were on general account, and not for any particular lot of corn. Had they been drawn on a specific lot, and accepted or paid, the property would, *ipso facto*, be transferred to the drawees and acceptors, the appellants. Fallis purchased all the corn now in controversy. Much of it has never been paid for by Fallis or by any one else. Some of the shippers testified they sold to plaintiffs, but, in fact, to Fallis. In some few cases, small advances were made by Fallis on some of the corn, but no payment was made on any particular shipment of corn, but, as Fallis himself testified, all payments were made on general account. The books of account kept by Fallis with the parties from whom he purchased, and who shipped the corn, fail to show that any money was paid at the time of any of the shipments on any specific lot.

From all we can find in this record, appellants advanced or paid no money on this corn, so as to acquire a special property

in it. The question was fairly submitted to the jury, and they have found, we think correctly, appellants had no general or special property in this corn.

It is sufficiently apparent that appellants had not paid for this corn when put on the cars for shipment to Cairo. Fallis, it is true, testified appellants were the owners of the corn, but four out of five members of the firm composed of appellants, testified the corn was not theirs until it arrived at Cairo and passed inspection, and this is the meaning of the contract between appellants and Fallis of August 13, 1864. Therein it is expressly provided, that a preference shall be given the grain shipped by Fallis, provided (including his per cent, profits and time of delivery,) it shall appear to appellants as advantageous to them as they can buy of other parties in the places of delivery; and it was further agreed, when Fallis should have made his report at what price he could deliver grain, from time to time, and appellants shall have agreed to accept any portion thereof, Fallis was to proceed at once to have the grain loaded on cars, and draw, when loaded, as authorized as above; and the grain so loaded shall be considered contracted for, and belong to appellants, except such portions of it as might be condemned on account of short weight or quality of grain at the place of final delivery. That portion of said shipment was to be charged back by appellants to Fallis, and by him credited to appellants.

These appellants have always insisted the grain shipped to their consignee by Fallis was not their property until it had been inspected and accepted. With what face can they now say, it was their grain from the time it was shipped, and on which they had paid nothing?

This is the main question in the case, and, under the evidence, the jury had a right to find for the appellees on this point, and that is decisive.

But it is urged the jury were not properly instructed on this point. We do not think so, so far as this point is involved. As we understand this contract, before this corn, bought by

Fallis, could become the property of appellants, when put on the cars specific bills of lading were to be made out and drafts drawn on appellants to pay the same. The proofs fail to show this was done. On the contrary, all the payments made by appellants to Fallis, or to others, were not on specific quantities or shipments, but on general account, and the plaintiffs themselves have ever denied the corn was theirs until it had been inspected and accepted. Such payments on general account could not create a lien on any specific corn.

Considering this the turning point of the case, we have not deemed it necessary to discuss other questions. This is decisive of the case, and that is sufficient. Errors may have been committed to the prejudice of appellants in the trial of the cause, but none on this point. We are satisfied the jury have rendered a proper verdict, and we will not interfere with their decision, believing justice has been done.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissents.

Subsequently a petition for a rehearing was presented, upon the consideration of which the following additional opinion was delivered:

Per CURIAM: We have considered the petition presented by the plaintiffs in this cause for a rehearing, accompanied as it is by an elaborate argument, in which much severe criticism of the opinion is indulged. Passing by this, which is a clear departure from the rule of this court in respect to applications for a rehearing, we have undergone the labor of a reinvestigation of the whole case, and are satisfied the opinion is right, and must stand as the judgment of this court.

It would be an useless labor to take up the points and argument of more than eighty printed pages, *seriatim;* it will be sufficient to consider those most important, and which are decisive of the case. The first position assumed by the peti-

tioners is, that this court had no right to pass over other questions and place its opinion solely upon one question.

The important fact in the case was, who was the owner of this corn? It was strongly contested, and the jury found, as they had a right to do, from the clear preponderance of the testimony, that it was not in the plaintiffs in this action. The verdict, it is true, was a general one, and the petitioners contend that there is nothing in the record to show how the jury found upon the question of title to, or interest of plaintiffs in, the grain. They say, for aught this court knows, or can legally know, they may have found for the plaintiffs upon this point, and still have found the verdict they did find, for the defendants. There was no other issue than the general issue, *non assumpsit*, which casts the burden upon plaintiffs to make out their case, and show by a clear preponderance of the evidence a right to recover.

What was their case? It was briefly this: that the plaintiffs had delivered to defendants, as common carriers, a quantity of corn to be carried to Cairo, consigned to Cobb, Blaisdell & Co.; that by the negligence of defendants, and delay in carrying the grain, it became damaged, and was lost to the plaintiffs.

This case was to be sustained by sufficient proofs. The plaintiffs were required to prove to the satisfaction of the jury, the grain was their property—that defendants received it as common carriers, to be carried to Cairo—that they so delayed the transportation as to cause damage to the grain, and the extent of such damage. All these questions were before the jury, the central one being, who was the owner of this corn—did the plaintiffs own it? How could the jury find this fact in favor of plaintiffs, against their own testimony? It was all purchased of many different parties by one Fallis, to be the property of the plaintiffs upon a certain contingency, that it should pass inspection when it reached its destination; this is what a majority of the plaintiffs swore. They absolutely disclaimed all ownership in the corn unless it should pass inspec-

tion, which it never did, and the contract between plaintiffs and Fallis shows the corn was to be plaintiffs only after inspection. Appellants say, that parties from whom the corn was purchased testified they sold to plaintiffs, but they state they dealt with Fallis, and that he purchased all the corn about which this contention has arisen. We can not think this should overbalance the sworn testimony of the plaintiffs, and so the jury correctly determined. If it can be said there was a conflict in the testimony on this point, the jury had a right to reconcile it by exercise of their best judgment, and we think they have properly decided this point.

But, it is urged, the plaintiffs had such a special property in this grain as entitled them to maintain this action. Conceding this, the other question for the jury to decide is, was there any such delay in the transportation of this grain, as, under the circumstances, would render the defendants liable, and this question belongs to both phases of the case. What facts had the jury before them on this point? Fallis, and all other shippers of grain or other goods at that time, knew there was a very large accumulation of cars on the track at Cairo, which, for some cause, not chargeable to defendants, had not been unloaded, and caused an obstruction to the approach of other cars. Under these well known circumstances, and this obstruction to regular transportation, the officers of the road refused to receive this corn, alleging, as a reason, this accumulation, and that neither the government nor the plaintiffs would receive corn as fast as they brought it to Cairo, thus keeping their cars full on the track and causing this obstruction and glut. Under these circumstances, Mr. Arthur, the general superintendent of this road, when applied to for transportation of the corn, refused to supply cars, for the reason they could not get rid of the corn when it reached Cairo. Fallis, to induce the superintendent to furnish cars, faithfully promised they should be promptly unloaded at Cairo. It was a reliance on this promise the cars were furnished; but when the corn arrived at Cairo, after some delay in reaching there,

caused by accumulation of cars on the track at different stations, the plaintiffs positively refused to have anything to do with it. There was no one there on their behalf to receive it and unload the cars.

How a jury of reasonable, common sense men could, under these circumstances, and with these facts before them, find any other verdict than they did, is incomprehensible.

But, say appellants, the jury were misdirected on important points. The instructions are quite numerous, and we have considered all of them, and find some of them are liable to objection, but inasmuch as they could not have misled the jury from the true path of inquiry, no injury resulted to appellants.

It has been often held by, and it is the established doctrine of, this court, that a judgment will not be reversed if erroneous instructions have been given, if, upon the whole record, it appears that justice has been done.

Upon the whole record, we are of opinion justice has been done, and the right declared.

The petition for a rehearing is denied.

*Rehearing denied.*

SCOTT, CRAIG, and DICKEY, J.J.: We do not concur in the opinion of the majority of the court. Without expressing our views at length, we are of opinion the judgment heretofore entered is warranted neither by the law nor the facts in the case, and a rehearing should be granted.