ILLINOIS CENTRAL RAILROAD COMPANY

v.

JACOB F. MILLER ET AL., FOR USE, ETC.

*Railroads—Freight—Delay in Transportation—Limitations—Act of 1849, Secs. 17, 18—Shipping Receipts—Bills of Lading—Former Adjudication—Evidence—Practice—Finding of Facts.*

1.   To be a contract in writing a written instrument must set forth the undertakings of the parties to it so plainly as to require neither parol testimony nor the promises or duties which the law would imply from the facts stated, to ascertain the extent and force thereof.

2.   Where a shipping receipt upon which recovery is sought to be had does not contain any express agreement to forward certain goods to their destination, to ascertain the carrier's undertaking with reference thereto, resort must be had to the duties imposed, and promises implied by law.

3.   A suit against a common carrier may be maintained in the name of any person having either a general or special property in the goods involved, and an action properly brought by such person, will be a bar to any subsequent suit against the carrier by another party having either a general or special property in the same goods for the same damages.

4.   The presentation of shipping receipts, attached to which are drafts upon purchasers of grain, drawn by sellers thereof, shows that the property is in the hands of the carrier, and amounts to a delivery to the purchaser.

5.   In order that a former judgment shall amount to a bar to a subsequent suit, it is enough that the status of the action was such that the parties might have had their suit disposed of according to their respective rights, if they had presented all their evidence and the court had properly understood the facts and correctly applied the law.   It either failed to present all his proofs, or improperly managed his case, or subsequently discovers additional evidence in his behalf, or if the court finds contrary to the evidence or misapplies the law, the judgment, until corrected or properly vacated, is as conclusive upon the parties as though it had settled their controversy in accordance with the principles of abstract justice.

6.   Reasonable time, within the meaning of a contract of affreightment, must be determined by the circumstances attending and surrounding a given transaction.

7.   It *seems*, that if a shipper promises the carrier to do something which will enable the latter to make the time of transportation shorter than it otherwise would be, and fails to perform it, such fact can be shown by the latter in excuse for the delay, and without changing or modifying the *contract of affreightment.*

8.   In the case presented, this court holds that there was no such delay in the transportation of the grain involved, as would render defendant liable in damages herein; that in a former action defendant was charged with the same negligence with reference to the same merchandise as is here set up, and that the same is a bar to the present suit.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of McLean County; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. WILLIAMS & CAPEN, for appellant.

The instruments sued upon in these cases are not simple contracts in writing within the meaning of section 17 of statute of limitations of 1849, but are simple receipts for

I. C. R. R. Co. v. Miller.

the goods, from which the law implies a verbal promise to carry to the place of destination, but no such promise is expressed in the writing; and an action upon such implied promise falls within section 18 of that statute, and is barred in five years. Daniel on Neg. Insts. §§ 35, 36; Currier v. Lockwood, 40 Conn. 349; Beeching v. Westbrook, 8 M. and W. 411; Garland v. Scott, 15 La. Ann. 143; Smith v. Allen, 5 Day, 337; Bowles v. Lambert, 54 Ill. 237.

The owner or one having a special property in the goods, can alone sue for damage to the goods in the absence of an express written contract for the carriage.

To constitute an instrument a bill of lading, an essential element is an express promise or contract to carry the freight to its destination and there deliver to the consignee. The instruments sued upon in these cases contain no such promise or contract, and therefore are not bills of lading. Webster's Dictionary, " Bill of Lading; " Hutchinson on Carriers, §§ 120, 122; Daniel on Neg. Insts. § 1728; Benjamin on Sales, § 813, note (f); Angell on Carriers, § 464; Bacon's Abr., Art. Merchant and Merchandise, (l); Lickbarrow v. Mason, 1 S. L. C., top page 759, 719 *ad fin.* 722, 732; 1 Schouler's Pers. Prop. 408; Hyde v. Trent Co., 5 T. R. 389 (397); Wayland v. Moseley, 5 Ala. 430; May v. Babcock, 4 Ohio, 334, (341); Rowley v. Bigelow, 12 Pick. 307.

For cases showing the difference between a bill of lading and a shipping receipt, see Thompson v. Trail, 2 C. & P. 334; Craven v. Ryder, 6 Taunt. 433; Coosa Co. v. Barclay, 30 Ala. 120; Holbrook v. Vose, 6 Bosw. 76, (109); Hathesing v. Laing, L. R. 17 Eq. Cas. 92 (7 Moak, 705).

Wherever, in our own reports, a bill of lading is involved, it contains an express promise " to forward " or " to transport." Dunseth v. Wade, 2 Scam. 285; Dixon v. Dunham, 14 Ill. 324; Bissell v. Price, 16 Ill. 408; I. C. R. R. Co. v. Johnson, 34 Ill. 389; T. P. & W. R. R. Co. v. Merriman, 52 Ill. 123; I. C. R. R. Co. v. Owens, 53 Ill. 391; C. & N. W. R. W. Co. v. Montfort, 60 Ill. 175; Field v. C. & R. I. R. R. Co., 71 Ill. 458; M. D. & T. Co. v. Moore, 88 Ill. 136; M. C. R. R. Co. v. Boyd, 91 Ill. 268; Adams Ex. Co. v. Boskowitz, 107 Ill.

660; W., St. L. & P. R. W. Co. v. Jaggerman, 115 Ill. 407; Wallace v. Long, 8 Ill. App. 504.

The only case, we think, that can be claimed to be an exception to this is that of I. C. R. R. Co. v. Frankenberg, 54 Ill. 88, but there the instrument is called "a receipt or bill of lading," indiscriminately; the decision in no way depends upon that question, nor is it discussed.

The written instruments sued upon contain no promise to carry, and therefore give no right of action in themselves against the carrier, and the plaintiffs in these suits having neither a general nor special property in the goods, can not maintain the actions.

The owner or any one having a special property in the goods, is a proper party to sue the carrier for loss or damage on the goods for the wrongful act or default of the carrier, and a judgment in such suit is a bar to an action brought by any one else for the same damages. See Hutchinson on Carriers, Chap. XIII, and cases *infra.*

The judgment in the case of Cobb, Christy & Co. (who were the owners of the corn in controversy) is a bar to these actions, which are for the identical damages. Green v. Clark, 12 N. Y. 343; Bigelow on Estoppel, 77–8.

If a party have an interest in the result of a suit, which might be brought either in his name or the name of another, and it is, by his consent, brought in the name of another, and he consents to the carrying on of the suit, and is to participate in the amount recovered, if there be a recovery, he is a privy in law and bound by the judgment, and such judgment will be a bar to a new suit instituted by the party who participated in carrying on the former suit. Cole v. Favorite, 69 Ill. 457 ; Hanna v. Read, 102 Id. 596; Drake v. Perry, 58 Id. 122 ; Bennitt v. W. S. M. Co., 18 Ill. App. 17, 119 Ill. 9; Att'y Gen. v. C. & E. R. R. Co., 112 Ill. 520; Harmon v. Auditor, 22 Ill. App. 135 ; Woodhouse v. Duncan, (Ct. App. N. Y.), 13 N. E. Rep. 334; Green v. Clark, 12 N. Y. 343; Miller v. L. M. T. Co., (U. S. Cir. Ct. Mo.), Chi. Leg. News, Oct. 1, 1888, p. 18; Stoddard v. Thompson, 31 Ia. 80; McNamee v. Moreland, 26 Ia. 69; Finn v. W. R. R. Co.,

112 Mass. 524; I. C. R. R. Co. v. Cobb, 64 Ill. 132–3; Calkins v. Allerton, 3 Barb. 171; Smith's Leading Cases, II, 435; Crow v. Bowlby, 68 Ill. 23.

The judgment or decree of a court possessing competent jurisdiction is final, not only as to the matters actually determined, but as to every other question, title and right involved in the litigation and passed upon by the court. Hawley v. Simons, 102 Ill. 115; Hanna v. Read, 102 Ill. 595 (605); Cole v. Favorite, 59 Ill. 457; Gray v. Gillilan, 15 Ill. 453; Vanlandingham v. Ryan, 17 Ill. 25; Taylor v. Field, 22 Ill. App. 436.

It is the duty of the consignee promptly to receive from the carrier the goods at the point of destination. If he fails to do this, it then becomes the duty of the carrier to warehouse them, and to take reasonable care of them for a reasonable time, on account of the consignee, or whom it might concern. Redfield on Railways, I, pp. 52 and 53; II, p. 65; pp. 16, 17 and 18; Angell on Carriers, pp. 502, 291; Porter v. C. & R. I. R. R. Co., 20 Ill. 407; C. & A. R. R. Co. v. Scott, 42 Ill. 132; Crawford v. Clark, 15 Ill. 561; Ostrander v. Brown, 15 Johns. 39; Hemphill v. Chenie, 6 W. & S. 62; G. W. Ry. v. Crouch, 3 H. & N. 183; Thomas v. B. & P. Ry. Co., 10 Metc. 472.

Messrs. HAMILTON SPENCER, BENJAMIN & MORRISSEY and JOHN E. POLLOCK, for appellees.

The bills of lading or shipping receipts are contracts in writing. The Delaware, 14 Wal. 579; Russell v. Whipple, 2 Cow. 536; Kimball v. Huntington, 10 Wend. 675; Luquer v. Prosser, 1 Hill, 258; Sackett v. Spencer, 29 Barb. (N. Y.), 180; Franklin v. March, 6 N. H. 364; Cummings v. Freeman, 2 Hump. (Tenn.) 143; Carver v. Hayes, 47 Me. 257; Brady v. Chandler, 31 Mo. 28; Huyck v. Meador, 24 Ark. 191; Anderson v. Pierce, 36 Ark. 293; Ashley v. Vischer, 24 Cal. 322, 328; Jacquin v. Warren, 40 Ill. 459; I. C. R. R. Co. v. Schwartz, 13 Ill. App. 496; I. C. R. R. Co. v. Frankenberg, 54 Ill. 90, 99; I. C. R. R. Co. v. Johnson, 34 Ill. 389, 393.

The consignor can maintain an action of assumpsit against the carrier for a breach of the contract embodied in the bill of lading given to him by the carrier. Blanchard v. Page, 8 Gray, 281; Hooper v. C. & N. Ry. Co., 27 Wis. 81; Southern Ex. Co. v. Craft, 49 Miss. 480; Carter v. Graves, 9 Yerg. (Tenn.) 446; Finn v. Western Railroad, 112 Mass. 524; Atkinson v. C. R. I. & P. Ry. Co., 80 Mo. 213; Northern Line Packet Co. v. Shearer, 61 Ill. 263; C. & A. R. R. Co. v. Shea, 66 Ill. 472; I. C. R. R. Co. v. Schwartz, 13 Ill. App. 490; O. & M. R. R. Co. v. Emrich, 24 Ill. App. 245; Hutchinson on Carriers, § 736; Schouler on Bailments and Carriers (2d Ed.), § 570.

It is of the essence of every kind of estoppel, that the subject of it should be certain. When it is doubtful (either from the record or from evidence designed to explain the same) upon which of several issues the judgment proceeded, the subject is still at large. It is essential that the issue in the second action, upon which the judgment is brought to bear, was a material issue in the first action, necessarily determined by the judgment therein, and that the former judgment was upon the merits. Bigelow on Estoppel (4th Ed.), 55, 57; Russell v. Place, 94 U. S. 606, 608, 610; Chrisman v. Harman, 29 Grattan, 494, 499; Hooker v. Hubbard, 102 Mass. 239, 245; Foster v. Busteed, 100 Mass. 409, 411; Burlen v. Shannon, 99 Mass. 200; Cook v. Burnley, 45 Tex. 97, 117; Packett Co. v. Sickles, 5 Wal. 580, 592; Hunter v. Davis, 19 Geo. 413, 415; Aiken v. Peck, 22 Vt. 225, 260; Church v. Chapin, 35 Vt. 223, 231; Dutton v. Woodman, 9 Cush. 255, 261; Supples v. Cannon, 44 Conn. 424, 428; Hughes v. United States, 4 Wall. 232, 237.

Where a railroad company, partially under the military control of the government, receives freight and issues its bills of lading for the same without containing any exception as to the governmental control, it thereby assumes the duties of a common carrier of goods for hire, and is subject to the liability attaching to that function. I. C. R. R. Co. v. McClellan, 54 Ill. 58; I. C. R. R. Co. v. Ashmead, 58 Ill. 487; I. C. R. R. Co. v. Cobb, Christy & Co., 64 Ill. 128; I. C. R. R. Co. v. Schwartz, 13 Ill. App. 490.

Except in the recital or the acknowledgment of the goods, and of their quantity and the condition when received, bills of lading are strict'y written contracts between the parties, and come within the general rule which prohibits the introduction of parol evidence to contradict or vary written contracts. Hutchinson on Carriers, § 126; The Delaware, 14 Wal. 579, 601; 1 Greenleaf on Evidence, § 275; M. Ins. Co. v. Morrison; 62 Ill. 242; Bayard v. Malcolm, 1 Johns. 467; I. C. R. R. Co. v. Schwartz, 13 Ill. App. 490; I. C. R. R. Co. v. Cobb, Christy & Co., 64 Ill. 134–37.

Conger, J. In January, 1865, the United States Government made a contract with Cobb, Christy & Co., for 500,000 bushels of corn and 100,000 bushels of oats to be delivered at Cairo, Illinois, for the use of the army.

During the winter and spring of 1864–5, one Elihu Fallis, who was acting as the agent of Cobb, Christy & Co., bought large quantities of corn for them at different points along the appellant's road, to be shipped to Cairo, at which place the firm of Cobb, Blaisdell & Co. (Mr. Cobb being the principal partner in both firms), acted for Cobb, Christy & Co., in receiving this corn, paying freight therefor, and turning it over to the government. The cars of corn upon arriving at Cairo could not be unloaded, either by the railroad, or Cobb, Blaisdell & Co., but, when the corn was accepted by the government, the cars were placed upon the government switch and unloaded by its own men. As the season advanced the corn arriving at Cairo began to be rejected by the government, on the ground that it was damaged and not merchantable, until the yards at Cairo and the side-tracks of the company, for quite a distance north of that point, became so filled with these cars of corn, that the company were unable to deliver, and about the first of February the company refused to receive freight faster than it could deliver at Cairo, and by the first of March had practically refused to receive at all. In the latter part of March, 1865, it is insisted by appellant that it had refused to ship any more corn to Cairo for Cobb, Christy & Co., because of the glut of cars at that

point and north along its line, and that thereupon Fallis, as the agent of Cobb, Christy & Co., to induce appellant to furnish cars for the shipment of the corn, promised Mr. Arthur, the general superintendent of appellant's road, that such cars should be promptly unloaded upon their arrival at Cairo, and upon these representations cars were furnished to Fallis, and the corn in question shipped. The corn, however, was not received, because greatly damaged, and this action is brought by appellees for the use of Cobb, Christy & Co., to recover upon the shipping receipts or bills of lading issued by the appellants to appellees. The declaration declares upon six shipping receipts, or bills of lading, exactly the same, except as to the date, the number of cars, weight, etc., and in three of them rate per 100 pounds is expressed. These instruments are as follows:

"PANOLA STATION, April 5th, 1865.

Received from Miller & Smith, account E. Fallis, in apparent good, order by the Illinois Central Railroad Company, consigned to Cobb, Blaisdell & Co., Cairo, the following articles, as marked and described in the margin, subject to the conditions and regulations, as per published tariff of said company, and payment of the freight at the rate of 42 cents per 100 lbs., and such other expenses or charges as may have accrued upon said articles. It is especially agreed and understood that the company are not responsible for loss of goods of which the contents are unknown; for leakage of any kinds of liquids; breakage of any kinds of glass; carboys of acids, or articles packed in glass, stoves or stove furniture, castings, machinery, carriages, furniture, musical instruments of any kind, packages of eggs, or for loss or damage on hay, hemp, cotton, or any articles, the bulk of which renders it necessary to be shipped in open cars, or for damage on perishable property of any kind, occasioned by delays from any cause, or change of weather, or for damage or loss by fire, or for loss or damage on the lake or rivers, unless it can be shown that such damage or loss occurred through the negligence or default of the agents of the company. And it is further especially understood, that for all loss and damage occurring

I. C. R. R. Co. v. Miller.

in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only, in whose custody the said packages may actually be at the time of the happening thereof ; it being understood that the said Illinois Central Railroad Company assumes no other responsibility for their safety or safe carriage than may be incurred on its own road. All packages subject to charge for cooperage, if necessary. Marks and Consignee. No. Description of Articles. Weight."

It is insisted by appellants that this suit is barred by the statute of limitations, which was relied upon as a defense in the court below. The cause of action accrued in April, 1865, and the suit was begun on the 29th day of March, 1881. The statute of limitations in force at the time, and that governs these cases, is the statute of 1849, and the 17th section of that act is as follows: "All actions founded upon any promissory note, simple contract in writing, bond, judgment or other evidence of indebtedness in writing, made, caused or entered into after the passage of this act, shall be commenced within sixteen years after the cause of action accrued and not thereafter." The 18th section reads as follows: "All actions, founded upon accounts, bills of exchange, orders, or upon promises not in writing, express or implied, made after the passage of this act, shall be commenced within five years next after the cause of action shall have accrued, and not thereafter." Gross' Statutes, 430. The question is, under which of these two sections of the statute do the alleged causes of actions in these cases fall? Appellees claim that they fall under the 17th section, and appellants insist that they fall under the 18th. If these instruments are "simple contracts in writing" they are governed by the 17th section, and the action is not barred. In Bishop on Contracts, Sec. 57, it is said : "A written contract is one which, in all its terms, is in writing. In Chitty on Contracts, Vol. 1, page 93, it is said: " The instrument must contain the words 'of final agreement;'" while in the recent case of Plumb v. Campbell, N. E. Reporter, of Dec. 28, 1888, the Supreme Court of this State in passing upon this question, use the following language: " If it be true

that the agreement as set forth in writing is so indefinite as to necessitate resort to parol testimony to make it complete, the law is that in applying the statutes of limitations, it must be treated as an oral contract."

It is clear, we think, from these authorities and others which might be cited, that a written instrument, to be a contract in writing, must set forth the undertakings of the parties to it so plainly as to require neither parol testimony nor the promises or duties which the law would imply from the facts stated, to ascertain the extent and force of the contract.

Many cases have been cited by counsel upon the question of what are and what are not contracts in writing, but it would serve no good purpose to review them; for it is not a question of what a writing must contain to be a contract, but, does this instrument, by a fair interpretation of its language, contain an express promise to forward and deliver the goods? If it does it is a written contract, and the present action is not barred. If not it is but a receipt for the goods, and an action would be barred in five years.

In examining this instrument to ascertain appellant's undertaking, it is a little difficult to look alone to the natural import of the words used, unaided by the duties imposed and promises implied by law. From the language used we are unable to find any express promise on the part of appellants to forward the goods to Cairo.

It is true the acceptance of the goods, evidenced by these instruments, imposed a duty to carry them to their marked destination, and when the law imposes a duty it will raise an implied promise to perform that duty, and upon a failure to perform it, suit may be maintained for the non-performance of the duty, or in assumpsit on the implied promise; hence, taking the facts stated in the receipts, together with the duties and promises the law implies from those facts, we have no difficulty in determining the rights and duties of the parties to the instrument, but from the language alone we are left in doubt. We can not concede to counsel that these instruments are strictly bills of lading. It is true they have been so called by both the Supreme Court

and this court, but in all cases when so mentioned the question of limitation was not under consideration.

A bill of lading, as defined by Daniel on Negotiable Instruments, Sec. 1728, " is a written acknowledgment by the master of a ship, or the representative of any common carrier, that he has received the goods therein described, for the voyage or journey stated, to be carried upon the terms, and delivered to the persons therein specified. It is at once a receipt for the goods, which renders the carrier responsible as their custodian, and an express written contract for their transportation and delivery." Keeping in view this definition of a bill of lading, together with the rule above stated, that to be a written contract all its terms and undertakings must be in writing, we are unable to find in these shipping receipts any express promise on the part of appellant to forward the goods to the consignees at Cairo. Such a promise can not be said to be in the first part of the instrument, for that is but a receipt of the goods, with the rate of freight and name of consignee.

The only sentence that can be claimed as importing or implying it is the last, which is as follows: " And it is further especially understood, that for all loss and damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only, in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the said Illinois Central Railroad Company assumes no other responsibility for their safety or safe carriage than may be incurred on its own road." It might be urged with much force that this language is an attempt to limit appellant's liability as a common carrier, and could serve no purpose unless the instrument was a contract to forward; still, we are inclined to think that these words in themselves do not import an express undertaking to forward and deliver to the consignee at Cairo. After giving full weight to the words of the instrument, with all the meaning they convey to the undertaking, it is believed that in seeking for an express undertaking on the part of appellant to forward, it can not be found in the instrument,

but, to ascertain the undertaking of appellant, resort must be had to the duties imposed, and promises implied by law.

It is also contended by appellant that a right of action in the present case is barred by the judgment in the case of Cobb, Christy & Co. against appellant, reported in 88 Ill. 394. The record of that case, together with the opinion of the Supreme Court, was put in evidence in this, and there is no contention but that both suits are about the same corn, and the same alleged negligence on the part of appellant.

The tenth count of the declaration, in that case, charges that Cobb, Christy & Co., through the firm of Miller & Smith (the nominal plaintiff in this suit), delivered to appellant as a common carrier, at Panola, Illinois, certain corn, which is the same as described in the shipping receipts upon which this action is based, to be carried to Cairo and there delivered to Cobb, Blaisdell & Co., for Cobb, Christy & Co., and that appellant negligently failed to do so, whereby the corn was damaged and they were injured. To this declaration appellant filed a plea of not guilty, and the statute of limitations; and the verdict of the jury was " not guilty." The case was appealed to the Supreme Court, and is reported in 88 Illinois, 394.

It is the law that a suit may be maintained against a common carrier in the name of any one having either a general or special property in the goods, and that an action properly brought by any one having such a right of action, will be a bar to any subsequent suit against the carrier by another party, having either a general or special property in the same goods, for the same damages. Redfield on Carriers, Sec. 321; Hutchinson on Carriers, Chap. XIII.

It would seem, therefore, to be clear, that if Cobb, Christy & Co., at the time of their suit against appellant had a general or special property in the corn, the judgment in that case would be final, and that the present plaintiffs would be barred from bringing an action for the same damages upon the shipping receipts given to them.

This court, in the case of I. C. R. R. Co. v. Schwartz, 13 Ill. App. 490, in passing upon this same question, and in speaking of the facts as shown by the record in that case, say:

" The corn was sold by appellee, Schwartz, to Fallis, to be delivered on the cars, consigned to Cobb, Christy & Co., government contractors, at Cairo, and to be paid for by bills drawn by Fallis on the consignees. The contract between Fallis and Cobb, Christy & Co., was that the corn was to be inspected by government inspector on its arrival at Cairo; and when it passed inspection they were to receive it and pay contract price. The corn did not pass the inspection; was never delivered to the consignees, nor did they ever make any payment upon it. Upon this evidence the central question presented to the jury at the trial of that case was, had Cobb, Christy & Co. such an interest in the corn, either general or special, as to give them a right of action against the carrier for a failure to deliver it in a reasonable time; and the jury, by their verdict, found they had not, upon which a judgment was rendered against them for costs, and the judgment was affirmed by the Supreme Court, 88th Ill. 394." And it was held there was no bar.

It would also seem that in the case of Cobb, Christy & Co. v. Appellant, judging from the opinion in 88 Illinois, the evidence in that case showed the corn was to be the property of Cobb, Christy & Co., only upon the contingency that it should pass inspection when it reached Cairo. And the court in its original opinion held the jury were warranted in finding that they had no special property in the corn, and no right of action. The record in this case, however, presents an entirely different state of facts as existing at the time of the transaction, upon which all these suits are based.

It appears from the evidence in the present record that Fallis, as the agent of Cobb, Christy & Co., purchased for them the corn at various stations along the Central road, to be delivered on board appellant's cars, in new gunnies. The corn was so delivered, and the vendors drew drafts on Cobb, Christy & Co., for the price, attaching to such drafts the shipping receipts received from the railroad company, and Mr. Cobb says he thinks these drafts were paid, at least they were all sent to the firm of Cobb, Christy & Co., and the shipping receipts were at the same time delivered to them, and these

being the documentary evidence of the shipper's property in the hands of the carrier, such delivery of the shipping receipts to Cobb, Christy & Co. was a good delivery of the corn to them, so as to vest the property in them. It was as effective in transferring the possession as the delivery of the keys of a warehouse is of the goods contained in it. M. C. R. R. Co. v. Phillips, 60 Ill. 198.

According to the testimony in this record, then, there is absolutely nothing shown in the original contracts made by Fallis, as agent of Cobb, Christy & Co., when he purchased the corn, about government inspection at Cairo or elsewhere; it was an absolute purchase of the corn, whereby the vendor's duties and responsibilities ceased when the corn was delivered on board the cars. After these contracts were made and the corn bought, there seems to have been some kind of an effort on the part of Fallis to get the contracts changed, so as to make them depend on government inspection at Cairo, but what the contract was or whether any at all was ever made does not appear. Counsel for appellant stated to the court on the trial below that he desired to prove by Mr. Fallis that he did not buy this corn subject to government inspection, and that he afterward notified the vendors that he would accept it only by government inspection, but was not permitted by the court to ask the question.

In determining whether the judgment in the case of Cobb, Christy & Co., against appellant is a bar to the present action we must take the facts as we find them presented by the testimony before us, and if from the facts so appearing we can see that appellant has once answered for its supposed negligence in failing to forward this corn, in a proper action, to those having such property or interest in the corn as entitled them to sue for the same damages as are claimed now, the question is *res adjudicata.*

It is true, before the former judgment can be an estoppel, it must be on the merits of the controversy. But in the language of Freeman on Judgments, Sec. 260: "To create such a judgment it is by no means essential that the controversy between plaintiff and defendant be determined 'on the

merits' in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their law-suit disposed of according to their respective rights, if they had presented all their evidence and the court had properly understood the facts and correctly applied the law. But if either party fail to present all his proofs, or improperly manage his case, or afterward discover additional evidence in his behalf, or if the court find contrary to the evidence, or misapply the law, in all these cases the judgment, until corrected or vacated in some appropriate manner, is as conclusive upon the parties as though it had settled their controversy in accordance with the principles of abstract justice."

We do not know what the testimony in the former case of Cobb, Christy & Co. against appellant was, except as we may judge from the opinion in 88 Illinois, but we are compelled to hold from the evidence in this record that Cobb, Christy & Co., at the time of such suit, had such an interest in the corn as entitled them to sue appellant for the damages occasioned by the alleged failure on the part of appellant to forward the corn; that in said suit appellant was charged with the same negligence as in this, and has answered to, and been vindicated from said charge of negligence. To permit a recovery in the present action would require appellant to be twice vexed for the same cause of action. "This principle of *res adjudicata* embraces not only what was determined in the former case, but also extends to any other matter properly involved, and which might have been raised and determined in it." Rogers v. Higgins et al., 57 Ill. 247.

In the former suit the negligence of appellant as the ground of action was distinctly charged in the declaration, and denied by the plea, and was therefore a matter properly involved, and which might have been raised and determined in it.

While the Supreme Court in their first opinion, in 88 Illinois, say the question of the ownership of the corn was the central one, still, in the opinion filed on the petition for rehearing, they also say that the other question for the jury

to decide was, was there any such delay in the transportation of this grain, as, under the circumstances, would render appellant liable; and this question they say belongs to both phases of the case.

If, however, there is any question as to the correctness of the position already taken in this opinion, we think, upon the merits of the controversy, the law is with the appellant. We reach this conclusion from a careful consideration of the testimony, which is evidently the same as in the case in 88 Illinois; at least the conclusions reached and announced by the court upon this point are fully supported by the testimony in this record, and we can not give our views upon this question better than by quoting and adopting the language there used:

"But, it is urged, the plaintiffs had such a special property in this grain as entitled them to maintain this action. Conceding this, the other question for the jury to decide is, was there any such delay in the transportation of this grain, as, under the circumstances, would render the defendants liable. And this question belongs to both phrases of the case. What facts had the jury before them on this point? Fallis and all other shippers of grain or other goods at that time knew there was a very large accumulation of cars on the track at Cairo, which, for some cause not chargeable to defendants, had not been unloaded, and caused an obstruction to the approach of other cars.

"Under these well known circumstances and this obstruction to regular transportation, the officers of the road refused to receive this corn, alleging as a reason this accumulation, and that neither the Government nor the plaintiffs would receive corn as fast as they brought it to Cairo, thus keeping their cars full on the track and causing this obstruction and glut. Under these circumstances Mr. Arthur, the general superintendent of this road, when applied to for transportation of the corn, refused to supply cars, for the reason they could not get rid of the corn when it reached Cairo. Fallis, to induce the superintendent to furnish cars, faithfully promised they should be promptly unloaded at Cairo. Relying on this promise the cars were furnished, but, when the

corn arrived at Cairo, after some delay in reaching there, caused by accumulation of cars on the track at different stations, the plaintiffs positively refused to have anything to do with it. There was no one there on their behalf to receive it and unload the cars. How a jury of reasonable, common-sense men could, under these circumstances, and with these facts before them, find any other verdict than they did, is incomprehensible."

The statement of Mr. Fallis, giving the reasons he urged upon Mr. Arthur to supply him with cars after he had refused to do so, on account of the condition of the road being blocked with cars, is as follows, and is the identical testimony given in the former case in a deposition, and by agreement incorporated into this record. He says:

" The most of the corn in this suit was loaded the first week in April or the last of March; some of it in February; the particular arrangement was made with Mr. Arthur for these cars; he said Cobb, Blaisdell & Co. had been having a large share of cars; I told him this grain had to be shipped by April 10th; he said they had had their proportion; I told him that the shippers along the line would be great losers—that they would be broken up; he said if that was so he would send cars, and he did send them; I told him the grain would be unloaded promptly, and upon that condition he furnished cars; the cars were furnished up to April 8th or 10th."

But it is insisted that these representations and promises on the part of Fallis are not proper to be considered, because they modify the written contract of affreightment, by adding a condition not named in it, and it seems to be so held in the Schwartz case.

If we are correct in holding these shipping receipts as not being written contracts, but only receipts for the goods, the objection has no force; but if it be conceded they are contracts they require no more than the law would imply, that is, that the corn should be forwarded in a reasonable time—and we are at a loss to perceive how this testimony adds to, or in any way changes or modifies the contract of affreightment.

The contract requires appellant to forward the corn in a

reasonable time. What is a reasonable time for the performance of that duty is determined by the circumstances attending and surrounding the transaction.

If the shipper promises the carrier to do something which will enable the latter to make the time of transportation shorter than it otherwise would be, and fails to perform it, why can not such fact be shown by the carrier in excuse for the delay, and that, too, without changing or modifying the contract of affreightment? The carrier offers the evidence to show that the contract has been executed according to its terms within a reasonable time.

For the reason above given we are of opinion that appellees have no right to recover in this action, and the judgment of the Circuit Court will be reversed.

*Judgment reversed.*

WALL, P. J., took no part in the decision of this case.

The clerk will recite in the final order the following as the finding of facts by this court:

The court finds that there was no such delay by the appellant in the transportation of the grain in this suit mentioned, as would render it liable for damages in the present action.

The court also finds that by the evidence appearing in this record, Cobb, Christy & Co., at the time of the suit by them against appellant, reported on page 394 of 88 Illinois, had such an interest in the corn then sued for, as entitled them to maintain a suit for any wrongful delay in its transportation. That the corn mentioned in that suit and in this is the same, and the same alleged delay in transportation is relied upon in both suits, and that such former suit was a bar to the present suit.