SAMUEL D. WOOD

V.

ROBERT E. WILLIAMS.

*Agency—Loan on Real Estate—Forgery—Sec. 22, Chap. 83, R. S.— Written Contract.*

1. The fraudulent concealment referred to in Sec. 22, Chap. 83, R. S., includes only the individual act of the person liable to the action, and not the act of his agent or servant.

2. In an action brought to recover from loan agents a sum loaned, upon the discovery that the note and mortgage given therefor were forgeries, this court holds that a certain letter, written by them, and the acceptance of the proposition therein contained, did not constitute a contract in writing, but was merely a letter of advice, and declines to interfere with the judgment for the defendant.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of McLean County; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. RAYBURN & BARRY, for appellant.

Messrs. JAMES S. EWING, JOHN T. LILLIARD, CHARLES L. CAPEN and JOHN M. SCOTT, for appellee.

CONGER, P. J.   This was an action of assumpsit brought by appellant against appellee and one Burr, who not having been served was not a party to the suit.

In 1882, Williams & Burr were loan agents, engaged in the loaning of money for other people.

Mr. Milner Brown was the father-in-law of appellant, Wood, and from the former Williams & Burr learned that Wood had money to loan, and on the 17th day of July, 1882, wrote to Brown the following letter:

                    "BLOOMINGTON, ILL., July 17, 1882.
MR. MILNER BROWN, Delavan, Ill.

*Dear Sir:*  We have to-day drawn papers for a loan of ($2,500), to be secured on 160 acres of improved farm in Livingston county, valued at $6,400.   The security is ample. We made the papers payable to Samuel D. Wood, and the loan bears 7 pct. annual interest, payable July 1, each year.  We get no coms. from the borrower, and as agreed with you, Mr. Wood will receive 6½ per cent interest, net, to him, and the other ½ pct. pr. ann. when interest is paid comes to us, for our trouble and expense in the matter.   The title is all right and the papers will be back here in a day or two; and if convenient, you may send us the amount on receipt of this, and oblige,
                    Yours truly,
                    WILLIAMS & BURR, A. B.

Wood sent the money to Williams & Burr, and they sent it to Woodrow & Fursman, at Pontiac, Illinois, to be loaned.

Fursman kept the money himself, and turned over to Williams & Burr certain papers purporting to be the note of one Patrick Carey, bearing date July 15, 1882, for $2,500, due July 1, 1887, payable to Wood, and a mortgage securing the same, also purporting to be executed by Carey and his wife.

Both note and mortgage were not genuine, having been forged by Fursman.

Williams & Burr, supposing the papers were genuine, turned them over to Wood, who received and held them under the same impression until the fall of 1889.

When interest became due Fursman sent the necessary amount required to pay it, to Williams & Burr, and they retained one-half of one per cent as their commissions, and forwarded the balance to Wood.

In the fall of 1889 it was discovered that the note and mortgage were forgeries. As soon as this fact was learned, Wood tendered to Williams & Burr the note and mortgage, and demanded a return of his money, which demand they refused to comply with, and hence this action.

The declaration contained several counts, the third of which counts on the letter of July 17th, as being a written contract.

Various amendments to the declaration were made, demurrers and replications filed, upon which the court ruled, and which in our judgment it is not necessary to set forth in detail, as the rulings of the court present for our consideration the following questions of law, as presented in appellant's brief, as decisive of the case.

First. Does the letter of July 17, 1882, and the acceptance of the proposition therein expressed, constitute a contract in writing.

Second. If there was no contract in writing did Williams & Burr fraudulently conceal from Wood his cause of action so as to avoid the statute of limitations of five years.

Is the letter of July 17th a written contract as claimed by appellant, or a mere letter of advice, as it is termed in the brief of appellee? " A written contract is one which in all its terms is in writing." Bishop on Contracts, Sec. 57. " The instrument must contain the words of final agreement." Chitty on Contracts, 93. " If it be true that the agreement as set forth in writing, is so indefinite as to necessitate resort to parol testimony to make it complete, the law is that in applying the statute of limitations it must be treated as an oral contract." Plumb v. Campbell, 129 Ill. 101.

In Ill. Central R. R. Co. v. Miller, 32 Ill. App. 259, in passing upon a somewhat similar question we said : "A written instrument to be a contract in writing must set forth the undertakings of the parties to it so plainly as to require neither parol testimony nor the promises or duties which the law would imply from the facts stated, to ascertain the extent and force of the contract."

It is apparent from the words, "and as agreed with you," contained in the letter, that there had been a contract between the parties, prior to this letter, in reference to the loaning of this money. What the contract was, whether it tended only to the commissions to be charged, or embraced the whole subject-matter, can not be determined from the letter.

Taking the whole letter, we are inclined to consider it as not in itself containing the contract between the parties, but as merely advising Brown what steps Williams & Burr had taken in carrying out the arrangement that had previously been made between the parties.

If the contract rested in parol, it is clear that the statute of limitations would be a complete bar to the present action, unless the action is saved by Sec. 22, Chap. 83, R. S., which is as follows :

"If a person liable to an action, fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action and not afterward."

It is not claimed by the pleadings that Williams & Burr, or either of them, had any knowledge of the crime of Fursman, or that they had any cause to suspect that the note and mortgage given to appellant in 1882, and purporting to be executed by Carey and his wife, were not genuine, until the fall of 1889, when the crime was discovered, and all interested parties learned the truth at or about the same time. It therefore becomes necessary to determine whether the language of the foregoing section means that the fraudulent concealment spoken of must be the individual act of the person liable to the action, or whether it may be the act of his agent or servant. We think it includes only the acts of the person himself.

To fraudulently conceal a cause of action, necessarily implies moral turpitude, and the perpetration of a wrong upon the part of the one charged with so doing; and as we read the section, an evil intention must exist in the mind of the party who is liable, otherwise we are at a loss to see how he can fraudulently conceal from his adversary his cause of action. If the Legislature had intended to make a defendant liable for the fraudulent concealment of others, we are inclined to think different language would have been used.

Without being entirely satisfied with the conclusion reached on the first point, we have felt that the best interests of the parties to this controversy would be subserved by affirming the judgment of the court below, so that these important questions might be settled by the Supreme Court without the necessity of going back to the Circuit Court.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*