220     APPELLATE COURTS OF ILLINOIS.

Ricks Sheep Co. v. Oregon Short Line R. Co., 180 Ill. App. 220.

## Ricks Sheep Company, Appellee v. Oregon Short Line Railroad Company, Appellant.

### Gen. No. 17,085.

1. CARRIERS—*when statement of opinion by witness not prejudicial.* In an action for negligence in the carriage of sheep it is not prejudicial error to permit a witness to give his opinion as to the market value of the sheep in the condition in which they would have arrived if they had been conveyed without negligence where there is evidence tending to prove unusual loss of weight, and of the market price of sheep in good condition and the verdict is justified by such evidence.

2. APPEALS AND ERRORS—*saving questions.* Appellant is not in a position to complain of error in giving instructions where no objections were made and exceptions preserved.

3. CARRIERS—*Interstate Commerce Act.* The Interstate Commerce Act, section 20, as amended by the Act of June 29, 1906 (34 U. S. at Large 593), exclusively controls the liability of a receiving carrier for damages in cases of interstate shipments of property and covers the whole subject-matter.

4. CARRIERS—*Interstate Commerce Act.* A right of action may accrue to the shipper under the Interstate Commerce Act as amended June 29, 1906, though he does not receive the bill of lading or receipt which the carrier is required by the act to issue.

5. CARRIERS—*Interstate Commerce Act.* Where a shipper brings action under the Interstate Commerce Act as amended by the act of June 29, 1906, for damages for the negligent conveyance of sheep the declaration states a cause of action though it does not allege that the shipper is the lawful holder of the bill of lading or receipt required by the first part of the act.

Appeal from the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 8, 1913.

BRODE B. DAVIS, for appellant; JOHN M. RANKIN, of counsel.

CHARLES A. BUTLER, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee recovered a judgment in the Municipal

Court against the Oregon Short Line Railroad Company for $467.55 for damages sustained by the negligence of the railroad company in conveying nine carloads of sheep, belonging to appellee, from Rexburg, Idaho, to Chicago, Illinois, in the fall of 1906.

The suit was brought as a first class case. A declaration of several counts was filed, alleging in substance, that defendant was a common carrier of goods and chattels for hire; that on September 22, 1906, plaintiff delivered to the defendant at Rexburg, Idaho, 2,397 sheep in good condition, to be carried from that place to Chicago, Illinois; that defendant, in consideration of a certain reward to it in that behalf, then and there promised the plaintiff to safely and securely carry said sheep and deliver them to the Knollin Sheep Commission Company, at Chicago, Illinois, in good condition within a reasonable time; that defendant failed to do so, and that by and through the negligence and improper conduct of defendant in that respect, plaintiff sustained a loss of $1,800 on the shipment.

No written contract, receipt or bill of lading was offered in evidence, either by plaintiff or defendant. It appears from the evidence that on the morning of September 22, 1906, plaintiff delivered to defendant's agent at Rexburg, Idaho, 2,476 sheep in good condition, and they were then loaded into nine cars. Defendant's agent at that point asked one of the plaintiff's men, who accompanied the sheep, "which way he wanted to route the sheep," and was told to route them "over the Short Line, Union Pacific and Northwestern" to Chicago. The sheep had been watered and fed just before they were put on the cars. The federal statute governing shipments of this character (Fed. Stat. Anno. Supp. 1909, p. 43) provides that sheep shall not be confined in railroad cars while in transit longer than twenty-eight hours "without unloading the same in a humane manner into properly equipped pens for rest, water and feed for a period

of five consecutive hours," unless prevented by storm or unavoidable causes, provided, that the time may be extended to thirty-six hours upon the written request of the person in custody of the sheep, and provided further, that sheep need not be unloaded in the night time, if the period of twenty-eight hours expires at night. It appears that for the purpose of complying with this statute, facilities for unloading sheep and for feeding and watering them, were provided by defendant and the connecting carriers, at ten stations at least along the route. The shipment left Rexburg about ten o'clock on the morning of September 22, 1906. During that day and the next day the train stopped several times (once to allow another stock train to pass) but the sheep were not unloaded until the train arrived at Rawlins, Wyoming, on the line of the Union Pacific. The train arrived there at seven o'clock P. M., September 23, 1906, but the stock yards at that place were so crowded that the sheep were not unloaded until the next day, after they had been confined at least fifty hours without food or water. There is evidence to the effect that the hay supplied to the sheep at Rawlins was of poor quality, and that the only water accessible was in troughs so high above the ground that the lambs could not drink from them; also that the troughs were surrounded by mud, which had a tendency to prevent the sheep from approaching the troughs to drink. There is some evidence to the effect that railroad traffic was unusually heavy at this time, resulting in unusual congestion, due in part to conditions following the earthquake at San Francisco. During the forenoon of September 25th, the sheep were again loaded on the cars and proceeded to Julesburg, Colorado, where the train remained for six hours, but the sheep were not unloaded, fed or watered at that place. The train reached North Platte, Nebraska, about eight o'clock in the evening of September 26th. There the sheep

remained in the cars all that night and were unloaded soon after daylight September 27th, having been a second time in continuous confinement more than thirty-six hours without food or water. The reason given for not unloading earlier was that the yards were full and that there were two or three other trains of live stock ahead of the plaintiff's shipment. Plaintiff's witnesses testified that the pasture at North Platte was short stubble and "salt grass," which had been eaten over, and that the water supplied to the sheep was from the North Platte river, which one witness described as "alkali" water. The next morning, September 28th, the sheep were again loaded in the cars. The next place at which they were unloaded was at Valley, Nebraska, about five o'clock the same day. There the pasture and water were good and the sheep remained there about twelve hours. The next stop was at Rochelle, Illinois, where they arrived on September 30th, and were again fed and watered. The sheep did not arrive in Chicago until October 4, 1906, having remained at Rochelle about twenty-four hours. When they arrived at Chicago they were shrunken and "rough looking" and those who survived had lost at least eight pounds each. Ninety-nine of them died in transit. There is evidence to the effect that the usual time for such a journey from Rexburg to Chicago was eight days, and that under ordinary circumstances sheep may be expected to lose three or four pounds in weight on such a trip.

It is first contended that the trial court erred in permitting a witness to give his opinion as to the market·value of the sheep "in the condition in which they would have arrived at the end of the usual and customary transit of eight days." To a question put in that form the witness testified that if the sheep on arrival had been "good, fat sheep," they would have sold on October first for twenty-five cents per hundred weight more than the sum actually realized from their sale in Chicago. If this were the only evidence

as to damages, we would be inclined to hold that the ruling of the trial court was prejudicial error. But as above stated, there was evidence tending to prove an actual loss in weight of the sheep amounting to approximately four pounds per head more than the usual loss upon an ordinary shipment of that character; and the evidence shows that on both October 1, and October 4, 1906, the market price of sheep in good condition was at least five cents a pound. Upon this basis, a verdict fixing the damages at $479.40 would have been justified, even if all other elements of damage were excluded. The verdict was less than that amount. The ruling complained of, therefore, evidently resulted in no injury to the appellant.

It is next claimed that the court erred in giving certain instructions on behalf of appellee. As to this point, we have searched the abstract of the record and the record itself, and we are unable to find any statement to the effect that any objection was made to the giving of any of the instructions, or that any exception thereto was preserved. Under these circumstances, appellant is not in a position to complain of any alleged error in the instructions. We have nevertheless considered the arguments as to the instructions and may properly say that while several of the instructions are open to criticism and perhaps are erroneous, yet in our opinion the jury could not have done otherwise than find the issues for the plaintiff upon any reasonable view of the evidence, nor, having so found, could the jury have awarded any less amount as damages than the amount of the verdict.

It is also urged that the declaration does not state a cause of action. It is contended that section 20 of the Interstate Commerce Act, as amended by the Act of June 29, 1906, commonly known as the Carmack amendment to the Hepburn Act (34 U. S. Stat. at Large, 595), has superseded all state laws upon the subject of interstate shipments of goods and chattels; that under the first part of that section, no cause of

action exists except in favor of the "lawful holder of a bill of lading, or receipt" for the shipment; and that in the absence of any allegation in the declaration that the plaintiff is the lawful holder of such a receipt or bill of lading, issued by the defendant, plaintiff has not brought itself within the main part of that act, but must recover if at all, under the proviso which preserves the common-law remedies. The portion of the section which is pertinent to this case reads as follows: "That any common carrier, railroad or transportation company, receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: *provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." This section came before the Supreme Court of this state in *Fry v. Southern Pac. Co.,* 247 Ill. 564, and it was there held that the section quoted is paramount to the state law in cases of interstate shipment. In *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186, the section in question was sustained as a valid exercise of federal power, and it was said (p. 198) that by that section Congress "has declared, in substance, that the act of receiving property for transportation to a point in another state, and beyond the line of the receiving carrier, shall impose on such receiving carrier the obligation of through transportation, with carrier liability throughout;" also (p. 201) that: "It must be conceded that the effect of the act in respect of carriers

receiving packages in one state for a point in another, and beyond its own lines, is to deny to such an initial carrier the former right to make a contract limiting liability to its own line." In *Adams Exp. Co. v. Croninger*, 226 U. S. 491, the same court again had before it the same section of the act, and it was there said: "That the legislation supersedes all the regulations and policies of a particular state on the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." In the case last cited, it was urged that the proviso above quoted preserves the right of action as it existed in the several states prior to the passage of the Carmack amendment; but the court held that the proviso has reference only to remedies existing at that time in the Federal courts, saying (p. 152): "To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself." These decisions clearly establish the rule that the liability of a receiving carrier for damages in cases of interstate shipments of property is now exclusively controlled by the provisions of the Carmack amendment, which was intended to, and does, cover the whole subject-matter, not only in suits brought to enforce the statutory liability created by the first clause of the amendment, but also in suits brought to enforce any common-law right of action, which latter right must be determined according to the principles rec-

ognized and enforced in the Federal courts prior to the enactment of that amendment.

As to the contention that no right of action accrues under the body of the amendment except to the "lawful holder of a receipt or bill of lading," it is to be noted that the "remedy or right of action" which is preserved by the proviso, as well as the right of action given by the main part of the amendment, is the right of action which accrues to a "lawful holder" of a "bill of lading or receipt." From this, it would seem to follow that if it is necessary, in a suit brought to enforce the *statutory* liability created by the main portion of the section, to allege and prove that the plaintiff is the "lawful holder" of a receipt or bill of lading, the language of the proviso (which preserves existing rights and remedies *to the same person, i. e.,* to the "holder of such receipt or bill of lading") makes such an· allegation quite as essential to the maintenance of a suit brought to enforce the *common-law right* of action thus preserved. And as the amendment covers the whole subject-matter, it would follow, if appellant's contention in this respect is ·sound, that the carrier could escape liability altogether by the simple expedient of refusing or neglecting to issue any receipt or bill of lading. But the first clause of the section imperatively makes it the *duty* of the carrier to issue such a receipt or bill of lading in all cases in which it receives property for transportation from a point in one state to a point in another state; and the second clause expressly provides that "no contract, receipt, rule or regulation shall exempt such common carrier　*　*　*　from the liability hereby imposed." Since, therefore, the receiving carrier is *bound* to issue a receipt or bill of lading, and is forbidden to make any contract, rule or regulation which exempts it from the liability imposed by the Carmack amendment, we think it is obvious that the statutory liability is imposed upon, and assumed by, the carrier, not by virtue of the issuance of any receipt or bill of

228     APPELLATE COURTS OF ILLINOIS.

Ricks Sheep Co. v. Oregon Short Line R. Co., 180 Ill. App. 220.

lading, but by the act of receiving property from a shipper for interstate transportation. In our opinion, this is the effect of the construction placed upon the Carmack amendment by the Supreme Court of the United States in *Atlantic Coast Line R. Co. v. River-side Mills, supra.* Under this interpretation of the amendment, whether the shipper actually receives a bill of lading or receipt from the carrier becomes a matter of no importance whatever, so far as the liability of the carrier to the shipper is concerned. To sustain the contention that the declaration must allege and the shipper must prove that the *defendant has performed its statutory duty* to issue a receipt or bill of lading, would enable the carrier to bring about by indirection and wilful violation of the statute, an exemption from liability which it could not otherwise be heard to assert, and thus to take advantage of its own wrong. It may be that the possession of such a receipt or bill of lading would be necessary if the suit were brought by some person other than the shipper, but that question is not before us, and we do not decide it. In *International Watch Co. v. Delaware, L. & W. R. Co.,* 80 N. J. Law 553, a similar contention was made and the Supreme Court of New Jersey said: "The words, 'lawful holder' in the clause which provides that a common carrier shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, etc., were used to include not only the shipper but any assignee of the bill of lading; and where no bill of lading is given, the shipper himself stands in the same position as if he was the lawful holder of such bill of lading, and the liability of the company to such shipper is the same liability as is imposed in favor of the lawful holder of a receipt or bill of lading." We agree with this reasoning and are of the opinion that the declaration states a good cause of action under the Carmack amendment. If any bill of lading was in fact issued in this case and such bill of

lading is held by any person other than the plaintiff, the facts in that regard might easily have been shown upon cross-examination of plaintiff's witnesses, or otherwise. No attempt was made by appellant to show any such facts.

For the reasons indicated, the judgment of the Municipal Court will be affirmed.

*Affirmed.*