## W. A. Fraser Company, Appellant, v. Chicago, Burlington & Quincy Railroad Company, Appellee.

### Gen. No. 19,650.

1. CARRIERS, § 45*—*when bill of lading is receipt or contract.* A bill of lading may be a receipt or a contract or both depending upon the terms thereof.

2. CARRIERS, § 50*—*when bill of lading creates implied contract.* Where a bill of lading merely takes the form of a receipt it carries with it an agreement to safely carry the property mentioned therein, but such duty arises not by reason of any express terms in the bill of lading, but by the implied contract created by the common law.

3. LIMITATION OF ACTIONS, § 11*—*when bills of lading not evidences of indebtedness in writing.* Bills of lading as shown by the record *held* to be in the form of receipts, and not express contracts for the transportation and delivery of grain, so that they could be regarded as evidences of indebtedness in writing within the meaning of section 16 of the Limitation Act, J. & A. ¶ 7211.

Appeal from the Municipal Court of Chicago; the Hon. HUGH J. KEARNS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed October 8, 1914.

**Statement by the Court.** This is an action brought in the Municipal Court of Chicago by W. A. Fraser Company, appellant and hereinafter called the plaintiff, against the Chicago, Burlington & Quincy Railroad Company, appellee, hereinafter called the defendant, for money damages incurred in the payment of money by said plaintiff to said defendant, namely, two

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

dollars per car for 2,307 cars; the said sum of two dollars being an extra charge over and above and in addition to the regular freight charge by said defendant for shipments between the initial point and destination.

Plaintiff was a dealer in grain in the city of Chicago, and in the course of its business it had made carload shipments of grain from certain points in the State of Illinois to Chicago on the defendant's line of railways. For such service plaintiff claims to have paid defendant the regular rate of freight charged by defendant for said shipments. Plaintiff contends that bills of lading "or written contracts," as plaintiff designates them in its amended statement of facts, were issued by the defendant, wherein W. A. Fraser Company, Chicago, Illinois, were the consignees. It is insisted by plaintiff that a custom prevailed in Chicago for many years that when shipments were consigned to a firm or elevator or warehouse in Chicago, that after notice of such arrival was sent by railroad to consignee, the cars would be permitted to remain forty-eight hours without additional charge, awaiting directions from consignee; that the grain inspectors would then inspect the shipments of grain, and after the inspection had been made, consignee would sell the grain on the board of trade or elsewhere, and after such sales had been made, bills of lading would be turned over to defendant, a receipt taken therefore, and at the same time written orders were given to defendant, giving directions where the grain should be delivered.

Plaintiff contends that not only was that the custom, but that the statutes of our State permit such course of action; that under the statutes the railroads were compelled to deliver to any elevator or warehouse along their lines or any connecting lines within the State; and further, that after the grain arrived at the original destination the consignor had the right to des-

98          Appellate Courts of Illinois.

W. A. Fraser Co. v. Chicago, B. & Q. R. Co., 189 Ill. App. 96.

ignate a change of shipping directions within the State, and if written notice of said change was served on the railroad at the place where such grain was delivered, before the grain was removed from the cars, such reconsignment should be made without any additional charge.

Plaintiff contends that in the case at bar it had shipped 2,307 cars during the period beginning May 17, 1902, and ending March 28, 1906, from various places in Illinois, to themselves as consignee, Chicago, Illinois; that after receipt of notice of the arrival of said cars, and after inspection of the grain, it went on the board of trade and made sales of the grain; that it then issued written orders upon defendant to deliver the cars to the purchaser, or in accordance with the direction of the purchaser; that it had paid the regular published tariff rate of freight for the shipments to Chicago; that it had also paid certain charges to the grain inspection department which had been collected by defendant for the State; and in addition, was compelled to pay two dollars per car for delivering them to the various persons to whom they sold the cars; and for the payment of this extra charge of two dollars per car it is seeking recovery in this action.

Defendant contends that the said sum of two dollars per car mentioned in plaintiff's amended statement of claim was not an extra charge over and above and in addition to the regular rate of freight charged by defendant for the shipment mentioned in plaintiff's amended statement of claim, but was part of the regular tariff and rate charged by defendant for such shipments; that said sum of two dollars per car was not demanded and collected by defendant for delivering said cars from and on the tracks of defendant, but was part of the regular tariff or rate charged by defendant for making such shipments; that said cars were not "consigned to, to wit; elevators and public warehouses at, to wit, New York City, New York"; that the plaintiff's supposed cause of action did not accrue at any

time within five years next before the beginning of this suit and is barred by the statute of limitations; that the said payments mentioned in plaintiff's amended statement of claim were freely and voluntarily made by plaintiff with full knowledge of all the facts and circumstances connected therewith and in accordance with the contracts under which said cars were transported and in accordance with the regular tariffs.

This suit was brought on June 8, 1912, which was within ten years of May 17, 1902, when the shipments commenced, and more than five years after March 28, 1906, the date of the last shipment. The case was tried before a court and jury, and at the conclusion of plaintiff's case, upon motion made by defendant, the court instructed the jury to find the issues for the defendant; upon such finding judgment was entered and an appeal was prosecuted to this court.

CHARLES A. BUTLER and BROWN & EWEN, for appellant; FRANKLIN RABER, of counsel.

J. A. CONNELL and W. D. BARGE, for appellee; CHESTER M. DAWES, of counsel.

MR. JUSTICE PAM delivered the opinion of the court.

In our view of the case, but one issue presents itself, namely: Was the action barred by section 15, chapter 83 of our statutes, which provides that "actions on unwritten contracts, express or implied, etc.    *    *    * shall be commenced within five years next after the cause of action accrued."    (J. & A. ¶ 7210.)

As set forth in the statement of facts, the plaintiff contends that written contracts or bills of lading were issued by the defendant to the plaintiff for the grain shipped over its road; that under these contracts plaintiff consigned the grain to itself at Chicago, Illinois, at a certain tariff. Plaintiff offered evidence to the effect that there were bills of lading issued covering ship-

ment of the various cars, as set forth in its amended statement of claim. At the trial counsel for plaintiff stated that it had given notice to the defendant to produce these bills of lading; this was admitted by defendant, and it was stated by counsel for defendant that "they do not produce the bills of lading." Thereupon the only witness for the plaintiff, a Mr. Brunswick, testified that the name of the consignor in the bills of lading was W. A. Fraser Company; that the name of the consignee was W. A. Fraser Company, Chicago, Illinois, and that there was mentioned therein a regular freight rate according to defendant's published tariff. It was also stated by the witness that in some instances the bills of lading had named some elevator at Chicago, Illinois, as consignee, but he was not certain of a single definite instance. On cross-examination of this witness by counsel for the defendant, he stated that various elevators may have been named in some of the bills of lading, but he could not state so definitely, nor could he say how many; in fact, counsel for defendant mentioned a few, and the witness could not in a single instance say whether or not they had ever received shipments from plaintiff. However, on cross-examination, several of the bills of lading were presented to the witness, and they were repeatedly the subject of questions and answers. On redirect examination the following questions were asked:

"Q. In these bills of lading was there any reference at all to the published tariffs, the tariffs and classifications of the Burlington?

Mr. Barge: That is objected to, the bill speaks for itself.

Mr. Butler: I have asked counsel to produce all the bills.

The Court: It is agreed that this is a sample of all of them; he has testified to bills that are not here. Objection overruled."

Plaintiff seeks to take this action out of the statute of limitations, claiming that it was based upon a written contract and therefore is subject to section 16 of

the Statute of Limitations, which provides that "actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within ten years next after the cause of action accrued." (J. & A. ¶ 7211.)

We have carefully read the record and fail to find the slightest testimony which shows any express contract of carriage entered into by defendant. Evidently those bills of lading were before the court; at least the one to which the court below referred as being a sample of all the others, must have been. It was not introduced in evidence, nor is it attached to the record.

Counsel for plaintiff contends that these bills of lading are written contracts. The law of our State is clear in this, that while a bill of lading may be a written contract, yet it is not necessarily so; but it may take the form of a receipt passing from the carrier to the shipper for property taken by the carrier for shipment; and it is true that when it takes the form of a receipt it also carries with it an agreement to safely carry the property mentioned in that receipt to the consignee at the point of destination. This duty upon the carrier where the bill of lading simply takes the form of a receipt arises, however, not by reason of any express terms in the bill of lading, but by the implied contract created by the common law. This principle finds illustration in the case of *Chicago & N. W. Ry. Co. v. Simon,* 160 Ill. 648, wherein it was held:

"Bills of lading may be both receipts and contracts. So far as they acknowledge the delivery and acceptance of the goods they are mere receipts. As to the rest they may become express contracts."

The evidence in the case at bar relative to these bills of lading merely sets forth the delivery of the goods to the carrier, the names of the consignor and consignee, and the point of destination, and a published tariff; the record is barren of any further evidence as to the remainder of the contents of the bills of lading.

102     APPELLATE COURTS OF ILLINOIS.

W. A. Fraser Co. v. Chicago, B. & Q. R. Co., 189 Ill. App. 96.

A case that was cited by counsel for both sides appears to this court to determine the issues here in favor of the defendant,—the case of *Illinois Cent. R. Co. v. Miller*, 32 Ill. App. 259; and in that case, what the defendant was pleased to call a receipt and the plaintiff a written contract, contained language much stronger than the instrument which is the basis of the case at bar; but even with that situation, the Court said:

"It is clear, we think, from these authorities and others which might be cited, that a written instrument, to be a contract in writing, must set forth the undertakings of the parties to it so plainly as to require neither parol testimony nor the promises or duties which the law would imply from the facts stated, to ascertain the extent and force of the contract.

Many cases have been cited by counsel upon the question of what are and what are not contracts in writing, but it would serve no good purpose to review them; for it is not a question of what a writing must contain to be a contract, but, does this instrument, by a fair interpretation of its language, contain an express promise to forward and deliver the goods? If it does it is a written contract, and the present action is not barred. If not it is but a receipt for the goods, and an action would be barred in five years."

And the Court continues to say:

"It is true the acceptance of the goods, evidenced by these instruments, imposed a duty to carry them to their marked destination, and when the law imposes a duty it will raise an implied promise to perform that duty, and upon a failure to perform it, suit may be maintained for the non-performance of the duty, or in assumpsit on the implied promise."

Then the Court goes on to state what a bill of lading is, and the language of the Court in that regard is cited by counsel for plaintiff in its brief, and it is as follows:

"A bill of lading, as defined by Daniel on Negotiable Instruments, sec. 1728, 'is a written acknowledgment

by the master of a ship, or the representative of any common carriers, that he has received the goods therein described, for the voyage or journey stated, to be carried upon the terms, and delivered to the persons therein specified. It is at once a receipt for the goods, which renders the carrier responsible as their custodian, and an express written contract for their transportation and delivery.' "

But the Court, continuing on directly after this definition, says:

"Keeping in view this definition of a bill of lading, together with the rule above stated, that to be a written contract all its terms and undertakings must be in writing, we are unable to find in these shipping receipts any express promise on the part of appellant to forward the goods to the consignees at Cairo. Such a promise can not be said to be in the first part of the instrument, for that is but a receipt of the goods, with the rate of freight and name of consignee."

And what the Court has said as to the contents of the first part of the instrument under consideration in that case, is particularly applicable to the case at bar, because the sum total of the evidence in the case (and we have searched the record diligently) but shows the receipt of the goods, the rate of freight and the name of the consignee. The principle of law that a bill of lading may be a receipt, or a contract, or both, depending upon the terms thereof, has been announced in later decisions in our State. We refer to the cases of *Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.*, 250 Ill. 402, and *Ricks Sheep Co. v. Oregon Short Line R. Co.*, 180 Ill. App. 220.

We can pass only upon the facts presented to us in the record. All we can say that the record shows is that the instruments, which the plaintiff designates bills of lading, were issued.

We are of the opinion that the bills of lading in this case, or what purport by the evidence to be bills of lading, can only be regarded as forms of receipts, which show an acceptance of the grain by defendant

from plaintiff, and not an express contract for its transportation and delivery. Nor can such instruments be regarded as such evidences of indebtedness in writing as to bring an action based thereon within section 16, chapter 83 of our statutes regarding limitations. These instruments will not support an action in themselves. To so hold would make them take the form of written contracts, and we have held directly to the contrary. Whatever duty devolved upon defendant by reason of such instruments was a duty imposed by law, and the contract for the transportation and delivery of the grain created thereby was one implied by law.

Section 15, chapter 83 of our statutes, (J. & A. ¶ 7210) expressly states that suits on such contracts must be brought within five years from the time the action accrued. The last transaction for which recovery is asked in plaintiff's amended statement of claim took place on March 28, 1906; and we being of the opinion, in view of the record in the case, that any right of action arising from such transaction was the result of an implied contract rather than an express written contract, the action was barred by the statute of limitations.

Having found that there were no express written contracts for the transportation and delivery of the grain, between plaintiff and defendant, we cannot therefore pass upon the plaintiff's contention that the terms of the contract were such that if we applied thereto sections 120 and 121 of chapter 114, R. S. of Illinois (J. & A. ¶¶ 8923, 8924), it can be said that defendant agreed to reconsign the shipments of grain to elevators on its lines or on connecting lines, upon written orders given to it by consignee after the cars had reached Chicago, Illinois, the point of destination, without an additional charge.

For the reasons hereinabove assigned, the judgment of the Municipal Court will be affirmed.

*Affirmed.*